IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| BARRY L. CROUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:11-CV-56 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Barry L. Crouch ("Crouch") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, argument of counsel and the applicable law, and conclude that the Administrative Law Judge ("ALJ") erroneously attributed a treating psychiatrist's opinion to an unacceptable medical source, and failed to consider and weigh the opinion as required by the regulations. As such, I **RECOMMEND GRANTING IN PART** Crouch's motion for summary judgment (Dkt. # 13), **DENYING** the Commissioner's motion for summary judgment (Dkt. # 16), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Crouch failed to demonstrate that he was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Crouch bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Crouch was born on October 15, 1975 (Administrative Record, hereinafter "R." 50, 163) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Crouch's date last insured is December 1, 2013, and thus, he must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Crouch must establish that his disability began on or after the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R § 416.501.

Crouch completed high school. (R. 51.) He has never had a driver's license. (R. 50.) He worked between 1995 and 2008 as a stock clerk, which was evaluated by the vocational expert to

3

be semi-skilled heavy work. (R. 51, 64.) Crouch stopped working in November 2008 due to trouble with concentration, anger outbursts and depression. (R. 51.) Crouch reported that during the relevant period, his daily activities included taking care of his mother, who has multiple sclerosis, and helping his mother with things around the house, such as chores and caring for pets. (R. 198.)

## Claim History

Crouch filed for SSI and DIB, claiming that his disability began on April 27, 2009, due to problems with depression, confusion, concentration, anguish, comprehension and memory. (R. 207.) The state agency denied his application at the initial and reconsideration levels of administrative review. (R. 76-82.) On April 6, 2011, ALJ Brian P. Kilbane held a hearing to consider Crouch's disability claim. (R. 47.) Crouch was represented by counsel at the hearing, which included testimony from Crouch, his mother, Loretta Casey, and vocational expert Robert Jackson. (R. 48-67)

On April 29, 2011, the ALJ entered his decision denying Crouch's claims for DIB and SSI. (R. 34-43.) The ALJ found that Crouch has severe impairments of bipolar disorder and generalized anxiety disorder. (R. 36.) Considering these impairments, the ALJ found that Crouch retained the RFC to perform a full range of work at all exertional levels, but restricted to simple, repetitive work tasks. (R. 38.) The ALJ determined that Crouch was not capable of performing his past relevant work. (R. 41.) However, given the evidence obtained from the vocational expert at the administrative hearing, the ALJ found that Crouch can perform work, such as housekeeping cleaner and hand packager, which exists in significant numbers in the national economy. (R. 42.)

4

On September 27, 2011, Crouch submitted to the Appeals Council a letter from his attorney, claiming that the ALJ erred by not attributing a report dated September 23, 2010 to Crouch's treating psychiatrist, Norman Holden, M.D. (R. 6-7.) On October 18, 2011, the Appeals Council denied Crouch's request for review. (R. 1-3.) This appeal followed.

## ANALYSIS

Crouch argues that the ALJ's opinion is not supported by substantial evidence because the ALJ erred by 1) attributing a September 23, 2010 medical opinion from his treating psychiatrist to a case worker; and 2) by improperly discrediting Crouch's credibility.

### Failure to Attribute Opinion to Treating Psychiatrist

The parties agree that the ALJ properly found that Crouch suffers from severe impairments of bipolar disorder and generalized anxiety disorder. However, the record contains conflicting medical opinions as to Crouch's functional limitations as a result of those severe impairments. On November 9, 2009, David S. Leen, Ph.D., performed a consultative psychological examination of Crouch. Dr. Leen diagnosed Crouch with mood disorder and anxiety disorder, but found that Crouch retained the ability to perform simple, repetitive work tasks, maintain reliable attendance, accept instructions from supervisors, deal appropriately with co-workers, deal with usual stressors, and complete a normal work week without interruptions resulting from his psychiatric symptoms. (R. 292.) The ALJ gave Dr. Leen's opinion great weight, specifically noting that Dr. Leen is a highly qualified psychologist and expert in the evaluation of medical issues and disability claims who had the opportunity to observe, examine and evaluate Crouch. The ALJ further found Dr. Leen's opinion consistent with the clinical findings on examination and with the record as a whole. (R. 40.)

5

The record also contains RFC reports by state agency psychologists Joseph Leizer, Ph.D., completed in November 2009, and Alan Entin, Ph.D., completed in April 2010. Drs. Leizer and Entin both gave great weight to Dr. Leen's opinion; however, they determined that Crouch was capable of only unskilled work because of additional limitations from those identified by Dr. Leen. Specifically, Drs. Leizer and Entin found that Crouch was moderately limited in his ability to maintain attention and concentration for extended periods, and to work in coordination with or in proximity to others without being distracted. (R. 220, 243-44.) They also found that Crouch has moderate limitations in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 221, 244.) The ALJ gave little weight to the state agency opinions, finding that they materially differed from Dr. Leen's opinion without explanation or reconciliation, specifically in their finding that Crouch suffered moderate restrictions in social functioning. (R. 40.)

On September 23, 2010, Dr. Holden, Crouch's treating psychiatrist, and Jennifer Watson, B.S., Crouch's case worker, completed a medical source statement with regard to Crouch's ability to do work-related activities. (R. 296.) This type-written narrative report is signed by both Dr. Holden and Ms. Watson. They concluded that Crouch has a very slim ability to succeed in full time employment given his persistent paranoia, racing thoughts, poor sleep, depression, angry mood swings and poor concentration. Dr. Holden and Ms. Watson stated that Crouch retained only a fair to poor ability to understand, remember, and carry out instructions, and to respond appropriately to supervision, co-workers and work pressure in a work setting. (R. 298-

6

99).  Finally, they stated that Crouch's impairments affect his socialization capability because he constantly thinks that others are out to harm him. (R. 299.)

The ALJ attributed the September 23, 2010 report solely to case worker Watson, and did not acknowledge that the report was also the opinion of Crouch's treating psychiatrist, Dr. Holden. (R. 40.)  The ALJ gave little weight to the opinion for three reasons: 1) Ms. Watson is not an acceptable medical source; 2) the opinion is inconsistent with the treatment notes demonstrating improved racing thoughts with medication management; and, 3) the opinion is inconsistent with clinical observations of Crouch's functioning on multiple examinations. (R. 40.)  Crouch argues that the ALJ's failure to attribute the September 23, 2010 opinion to his treating psychiatrist was error.  I agree.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion.  20 C.F.R. § 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or

7

disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693 (E.D.Va. Dec. 29, 2010).

There is no question that the ALJ did not apply the appropriate legal standard when evaluating the opinion of Dr. Holden. The ALJ's failure to employ the analysis provided for treating physician opinions under the regulations is error. "The failure to adequately address and explain the weight given to all medical reports in the text constitutes a serious error under 20 C.F.R. §§ 404.1527(b), 416.927(b)." Christian v. Comm'r, 2009 WL 2767649, at *7 (W.D.Va. Aug. 25, 2009). Further, "[t]he Supreme Court has long recognized a federal agency's obligation to abide by its duly promulgated regulations…Consistent with this principle, federal courts have remanded decisions of the Commissioner when they fail to articulate "good reasons" for discrediting the opinion of a treating source, as expressly required…" Saul v. Astrue, 2011 WL 1229781, at *5 (citing Holloran v. Barnhart, 362 F.3d 28, 33 (2nd Cir. 2004); Stroup v. Apfel, 205 F.3d 1334, at *6 (4th Cir. 2000)(unpublished table decision); Slayton v. Apfel, 175 F.3d 1016, at *3 (4th Cir. 1999)(unpublished table decision)).

The fact that the ALJ erred in his analysis of the September 23, 2010 report does not necessarily warrant a remand of the case. If the court finds the error to be "harmless," then it should nonetheless affirm the ALJ's decision. See Cameron v. Astrue, 2011 WL 2945817(W.D.Va. July 21, 2011)("'Procedural perfection in administrative proceedings is not required' and courts should vacate a judgment unless the substantial rights of a party have been affected.")(citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)). Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error. See Austin v. Astrue, 2007 WL 3070601, *6 (W.D.Va.

8

Oct.18, 2007) (citing Camp v. Massanari, 22 Fed.Appx. 311 (4th Cir. 2001)(citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)). In this inquiry, the court looks carefully at the evidence to determine whether it can predict with great confidence what the result will be on remand. McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011). The harmless error standard is not an exercise in rationalizing the ALJ's decision and substituting the court's hypothetical explanations for the ALJ's inadequate articulation. The court has already concluded that the ALJ erred. The question is now a prospective one – whether the court can say with great confidence what the ALJ would do on remand—rather than retrospective. Id.

The government argues that the ALJ's failure to attribute the opinion to Dr. Holden is harmless because the ALJ's other articulated reasons for rejecting the opinion are supported by substantial evidence. However, because I conclude that the ALJ erred by failing to attribute the September 23, 2010 report to a treating physician, the court's inquiry is no longer whether the ALJ's decision is supported by substantial evidence, but instead, whether it is inconceivable that a different administrative conclusion would have been reached absent the error. "Before a court may find that an ALJ's decision is supported by substantial evidence, the ALJ's decision must analyze all the relevant evidence and sufficiently explain his findings and rationale. The court faces a difficult task in applying the substantial evidence test when the ALJ's opinion does not show that the ALJ properly considered all of the relevant evidence." Paxton v. Astrue, 2012 WL 3011017, at *1 (W.D. Va. July 23, 2012)(internal citations omitted). See also Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir.1997)("Before we can determine whether substantial evidence supports an administrative determination, we must 'first ascertain whether [the agency] has discharged [its] duty to consider all relevant evidence.'")(citing Jordan v.

9

Califano, 582 F.2d 1333, 1335 (4th Cir. 1978)); Wilson v. Commissioner of Social Security, 378 F.3d 541, 546-7 (6th Cir. 2004)("to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the [sic] violate the regulation with impunity and render the protections promised therein illusory."); Saul v. Astrue, 2011 WL 1229781 * 4 (S.D.W.Va. March 28, 2011)(substantial evidence standard was inapplicable where ALJ "utterly failed" to acknowledge the existence of a treating physician's opinion).

Thus, the court must determine whether it is inconceivable that the ALJ would have reached a different conclusion absent the error in this case. Given the conflicting medical opinions in the record, specifically with regard to Crouch's restrictions in social functioning and his ability to engage in substantial gainful activity, I cannot find the ALJ's failure to consider the September 23, 2010 report as a treating psychiatrist's opinion to be harmless error.

As stated above, the record contains four opinions as to Crouch's functional capacity. The ALJ gave the greatest weight to the opinion of the consultative examiner, Dr. Leen, and used it as the basis for his RFC. The ALJ gave less weight to the opinions of the state agency psychologists, Drs. Leizer and Entin, because their opinions were more restrictive than that of Dr. Leen. Notably, both of the state agency doctors found that Crouch suffered moderate restrictions in social functioning, contrary to Dr. Leen's findings.

Dr. Holden's opinion is considerably more restrictive than the opinions of Dr. Leen and the state agency physicians. Dr. Holden found that Crouch had a very slim ability to succeed in full time employment given his persistent paranoia, racing thoughts, poor sleep, depression, angry mood swings and poor concentration, and that Crouch retained a fair to poor ability to

10

understand, remember, and carry out instructions, and a fair to poor ability to respond appropriately to supervision, co-workers and work pressure in a work setting. (R. 299.)

The ALJ rejected the opinion of Crouch's treating psychiatrist, Dr. Holden, not only because he attributed it to an unacceptable medical source, but also because he found it inconsistent with Crouch's treatment notes and clinical observations of his functioning. (R. 40.) Dr. Holden has had an ongoing treatment relationship with Crouch from December 2008 through 2011. Dr. Holden and Jennifer Watson's treatment notes and clinical observations of Crouch constitute the clear majority of medical documentation in the record, and are consistent with their findings set forth in the September 23, 2010 opinion. Dr. Holden's September 23, 2010 opinion is the only treating psychiatrist opinion in the record. Further, once Dr. Holden's opinion is properly considered, the majority of the medical opinion evidence in the record (Dr. Holden, Dr. Leizer and Dr. Entin) finds Crouch to be more restricted than Dr. Leen, specifically in regard to Crouch's social functioning. Although the majority of opinion evidence will not necessarily be determinative to the ALJ, it certainly requires appropriate consideration and explanation if it is not adopted.

I recognize that "[p]rocedural perfection in administrative proceedings is not required." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988.) This is not a case where the ALJ considered a treating physician's opinion but did not explicitly mention the weight given to it; nor is it a case where an erroneously omitted physician's opinion is duplicative of other opinions in the record. Cf. Morgan v. Barnhart, 142 Fed. Appx. 716, 723 (4th Cir. 2005) ("Any error the ALJ may have made in rejecting [a treating physician's] medical opinion, which provided essentially the same [] restrictions [] as [another, adopted opinion], was [] harmless."); Stewart v.

11

Apfel, 1999 WL 485862, at *5 (4th Cir. July 12, 1999) (unpublished opinion) (failing to mention a doctor's evaluation does not require remand where it added nothing to the medical record upon which the ALJ's decision was based).

Rather, in this case, the ALJ erroneously attributed the treating psychiatrist's opinion to a case worker and did not properly analyze the opinion as belonging to a treating physician as required by 20 C.F.R. §§ 404.1527(e), 416.927(e). The rejected opinion of Dr. Holden is considerably more restrictive than the opinion on which the ALJ relied as the basis for Crouch's RFC. Dr. Holden's conclusion as to Crouch's abilities directly contradicts the ALJ's statement that, "the record does not demonstrate the claimant suffers more than minimal restrictions in his ability to engage socially…" (R. 41.) Thus, I cannot find that the ALJ's failure to properly consider Dr. Holden's opinion to be harmless error, and I recommend that the case be remanded under sentence four of 42 U.S.C. § 405(g) for appropriate consideration of Dr. Holden's opinion.

## Credibility

Crouch also argues that the ALJ erred by failing to assign substantial credibility to his testimony regarding the limitations he suffers due to his mental impairments. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). At the administrative hearing, Crouch testified that he has mood swings, is irritable with others, does not socialize, and must be reminded to do personal grooming. (R. 53-57.) On his application for benefits, Crouch stated that he is unable to follow directions, complete tasks or comprehend instructions. (R. 199.) He needs reminders to take care of his personal needs and grooming, is uncomfortable in public, and has problems getting along with others. (R. 202-203.) Crouch's mother, Loretta Casey,

testified that Crouch is confused, angry and frustrated, that he does not socialize with others, and that she is afraid to have him in public. (R. 59-62.) Crouch argues that this testimony establishes that he suffers from a disabling mental condition.

Crouch's subjective allegations of his functional limitations are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Crouch met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Crouch's ability to work. Id. at 594-95.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The ALJ determined that Crouch's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Crouch's testimony concerning the limiting effects of those symptoms were only partially credible. (R. 39.) The ALJ noted several reasons for this finding, including the fact that Crouch was able to care for his mother, appeared clean and well groomed on examinations, had no psychiatric hospitalizations, stopped his individualized counseling sessions, and had questionable compliance with his prescription medication. (R. 40-41).

13

While the ALJ's decision to find Crouch less than fully credible appears to be supported by substantial evidence in the record, the ALJ's assessment may change once Dr. Holden's September 23, 2010 opinion is properly considered as a treating psychiatrist opinion. Dr. Holden's opinion supports Crouch's claims that he is uncomfortable in public, has problems getting along with others, and has difficulty following directions, completing tasks, and comprehending instructions. (R. 202-03, 296-97.) Thus, it is appropriate for the ALJ to reweigh Crouch's credibility after applying the appropriate weight to the medical opinions in the record.

## CONCLUSION

For the reasons set forth above, it is recommended that the defendant's motion for summary judgment be **DENIED**, Crouch's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: January 24, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge